ELIZABETH BROOMALL, individually and as Administratrix of the Estate of Edward Bishop, deceased,
Appellant,

*vs.*

LILLIAN M. HEITON,
Appellee.

*Supreme Court, On Appeal, January 8, 1963.*

*Joseph Donald Craven,* Wilmington, for appellant.

*Thomas Herlihy, Jr.,* and *Thomas Herlihy, III,* Wilmington, for appellee.

SOUTHERLAND, C. J., and WOLCOTT and TERRY, JJ., sitting.

WOLCOTT, Justice: This is an appeal from a judgment in Chancery dismissing the complaint of the Administratrix of the Estate of Edward Bishop seeking to enjoin the Aetna Life Insurance Company and Lillian M. Heiton, one from paying and the other from receiving the proceeds of a life insurance policy on the life of Edward Bishop. The result of the order of dismissal was to award the proceeds to Lillian M. Heiton. The Administratrix appeals.

Edward Bishop retired in 1954 at the age of 71 after 31 years of employment by Delaware Coach Company as a car sweeper. He had never received a promotion and was retired because of his growing physical feebleness. He thereafter received from Social Security payments and pension from his employer a total of $140.00 per month, until his death in 1961 at the age of 78.

At the time of his retirement he lived in Wilmington with his wife and a mentally-retarded son. He had one other child, a daughter, appellant here, who lived with her husband not in Wilmington. Apparently, Mrs. Bishop, while she lived, was the manager of the household. She died in 1956. Thereafter, Edward Bishop and his retarded son continued to live in the same house.

In 1951, Lillian M. Heiton and her husband moved in as neighbors of the Bishops and friendly relations were engaged in between the two families. After the death of Mrs. Bishop, Edward Bishop was a frequent visitor in the Heiton home. The Heitons did small favors for him. Not long after this Edward Bishop became estranged from his daughter and other relatives.

In 1956 Edward Bishop named as beneficiaries of the life insurance policy involved in this action his children, the appellant and the retarded son, Thomas. On August 5, 1958 he changed the beneficiaries and named Lillian Heiton as sole beneficiary. On August 13, 1958 he added her husband, James, as a co-beneficiary. James Heiton died on August 17, 1958 and on October 30 Edward Bishop removed his name as co-beneficiary.

Thereafter, Mrs. Heiton left the neighborhood but Edward Bishop continued to see her occasionally, either by visit by her to his

home or by going to see her at her new home with her daughter. Some time in the summer of 1959 Edward Bishop gave Mrs. Heiton a sealed envelope not to be opened until after his death. This envelope later was found to contain the insurance certificate with the designation of Mrs. Heiton as sole beneficiary.

In February, 1961 Edward Bishop became reconciled with his daughter and relatives and, thereafter, was visited and cared for by them until his death on May 22, 1961.

Appellant argues that the designation of Mrs. Heiton as sole beneficiary of the insurance policy should be set aside because at the time it was made Edward Bishop was (1) of unsound mind; (2) was subject to the undue influence of Mrs. Heiton who persuaded him to name her as beneficiary, and (3) that there was a fiduciary relationship between Mrs. Heiton and Edward Bishop which raises a presumption of fraud sufficient to set aside the designation of Mrs. Heiton as beneficiary.

With respect to the first reason advanced, the difficulty is that the Vice Chancellor who heard the testimony found that Edward Bishop, while of limited education and initiative, was still physically and mentally healthy from the time of his wife's death to his own. We have read the record referred to by both sides and are of the opinion that this finding is amply supported by the evidence.

As to the charge of undue influence, the Vice Chancellor ruled that the testimony offered in support of the charge was insufficient to warrant a finding of undue influence. Again, we have examined the record and we agree with the Vice Chancellor that the testimony offered in support of the charge falls short of establishing it.

Appellant, however, draws three conclusions from the testimony: (1) that Edward Bishop lavished his retirement income on Mrs. Heiton; (2) that he was often without fuel for his home and food for himself and his son, and (3) that Mrs. Heiton influenced him to do this, trading on his desire to marry her after the death of her husband. We agree with the Vice Chancellor, however, that the evidence does not justify these conclusions. The most that was proved was that a certain few inconsequential gifts were made by him to Mrs. Heiton,

and that on an uncertain number of occasions Edward and his son were without food and fuel. The testimony falls far short of proving that Edward Bishop dissipated his assets because of improvident gifts to Mrs. Heiton.

With respect to the delivery of the change of beneficiary to Mrs. Heiton by Edward Bishop, there is no testimony to the effect that this was the result of influence by Mrs. Heiton. She, herself, testified that she did not know the contents of the envelope, but thought it might contain a small sum of money as thanks for small favors she had done for him in the past. In point of fact, at the time he made the change, Edward Bishop was alienated from his family, apparently from dissatisfaction at being told what to do by his female relatives, which fact offers a possible explanation for the change.

Appellant argues that cutting off his daughter and retarded son was so unnatural as to, itself, prove that he was acting under the undue influence of Mrs. Heiton. As the Vice Chancellor observed, however, the fact of his estrangement from and resentment toward the members of his family do not make the designation of a stranger to his blood as beneficiary of his insurance unnatural *per se*. In the absence of proof of circumstances clearly showing an attempt by the named beneficiary to accomplish that result, no presumption of undue influence is permissible. In this case there is no such proof.

Finally, appellant argues that Mrs. Heiton stood in a fiduciary relationship to Edward Bishop and, thus, may not be permitted to enrich herself by breach of that relationship. In support are cited *Swain v. Moore,* 31 *Del.Ch.* 288, 71 *A.2d* 264, and *McKnatt v. McKnatt,* 10 *Del.Ch.* 392, 93 *A.* 367, but these cases are not in point. Both the cited cases were suits to set aside *inter vivos* transfers of property made by aged and helpless men allegedly in return for care for the remainder of the grantors' lives. The facts at bar are entirely dissimilar.

In conclusion, the Vice Chancellor decided this case upon the authority of *Tracey v. Prudential Insurance Co.,* 34 *Del.Ch.* 207, 101 *A.2d* 321, a decision of the Chancellor in an action brought by a widow to void the substitution by the deceased husband of his housekeeper for his widow as beneficiary of his life insurance. The Chancellor

refused to do so. We have considered this decision and are of the opinion that it properly expresses the law upon the subject.

The judgment below is affirmed.